IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| DAVID A. MELSHA,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C14-0003<br><br>RULING ON JUDICIAL REVIEW |

TABLE OF CONTENTS

I.  INTRODUCTION ............................................. 2

II. PRINCIPLES OF REVIEW ..................................... 2

III. FACTS ................................................... 4
    A.    Melsha's Education and Employment Background ............. 4
    B.    Vocational Expert's Testimony from the Administrative Hearing .... 4
    C.    Melsha's Medical History ............................... 5

IV. CONCLUSIONS OF LAW ...................................... 6
    A.    ALJ's Disability Determination .......................... 6
    B.    Objections Raised By Claimant ........................... 9
        1.    Dr. Epp's Opinions ................................. 9
        2.    Vocational Expert Testimony and the DOT ............ 11

V.  CONCLUSION .............................................. 15

VI. ORDER ................................................... 15

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff David A. Melsha on January 9, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits.[1] Melsha asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him SSI benefits. In the alternative, Melsha requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

---

[1] On March 31, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have

decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Melsha's Education and Employment Background

Melsha was born in 1961. He is a high school graduate. In the past, Melsha worked as a refrigeration mechanic.

### B. Vocational Expert's Testimony from the Administrative Hearing

At the administrative hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who is:

> capable of light work . . . [and] can occasionally climb, balance, stoop, kneel, crouch, and crawl; and should perform simple, routine tasks; and can have occasional interaction with the public, coworkers, and supervisors.

(Administrative Record at 60.) The vocational expert testified that under such limitations, Melsha could not perform his past relevant work. The vocational expert testified, however, that Melsha could perform the following jobs: (1) cafeteria attendant, (2) marker, and (3) mail clerk. The ALJ asked the vocational expert a follow-up question:

> Q: Okay. Now assume that same person. And this person, in addition to those restrictions that I gave you, is also limited to only occasional overhead reaching with the left dominant upper extremity. Would that change those jobs?
> A: No, they would still remain[.] . . .

(Administrative Record at 61.)

### C. Melsha's Medical History

On February 23, 2011, at the request of Disability Determination Services ("DDS"), Melsha met with Dr. Robin L. Epp, M.D., for a consultative examination. In reviewing Melsha's medical history, Dr. Epp noted:

> [Melsha] states that the arthritis in his back was diagnosed in 2010 by Dr. Abernathey. He had a laminectomy in 2005. He has had medications as well. His symptoms include severe back pain with right leg symptoms. He rates his pain as 6/10 at best, 7/10 on average and 10/10 at worst. Any lifting or bending increases his pain. Laying down decreases his pain.

(Administrative Record at 446.) Melsha also informed Dr. Epp that he has problems with physical activities such as standing, sitting, walking, climbing stairs, lifting, carrying and pushing and pulling due to back pain. Upon examination, Dr. Epp opined that Melsha had the following physical restrictions: (1) lifting, pushing, pulling, and carrying 10 pounds floor to waist and over the shoulder rarely; (2) lifting, pushing, pulling, and carrying 20 pounds waist to shoulder occasionally; (3) sitting occasionally; (4) rarely standing or walking; and (5) should avoid stooping, bending, crawling, kneeling, and climbing ladders. According to Dr. Epp, all of Melsha's restrictions were due to low back pain and radicular symptoms. Dr. Epp found no restrictions with Melsha's upper extermities or grip strength.

On February 25, 2011, at the request of DDS, Melsha met with Dr. Michael C. March, Ph.D., for a mental status examination. Melsha indicated that his chief complaint was depression and experiencing "significant" psychosocial stressors. Melsha further reported that he "has been quite fatigued, and has feelings of worthlessness and guilt. He reported that his attention, concentration, and short-term memory have been 'okay.'"[2] Additionally, Melsha reported:

---

[2] Administrative Record at 454.

> he currently drinks approximately six beers each evening. He has had "a lot of treatment" for alcohol dependence, estimating approximately four different placements in treatment programs including at the Area Substance Abuse Council. He has history of heavy use of "hard liquor. . . ." He has had a number of OWI charges, however, and when asked to provide the number he stated "too many," though clarified "none for the last 10 to 15 years though."

(Administrative Record at 455.) Upon examination, Dr. March diagnosed Melsha with major depressive disorder (moderate to severe) with anxious features and alcohol dependence. Dr. March assessed Melsha's GAF score at 60. Dr. March concluded that:

> [Melsha] appears to have generally intact capacity to remember and understand instructions, procedures, and locations, though he may display some inefficiency in his recall as was evident today. He displayed intact capacity to maintain attention, concentration, and pace from a cognitive perspective. His greater difficulties of course may well be his ability to maintain physical activity, as he reported he can tolerate no more than two hours of housework without requiring rest. [Melsha] is capable of interacting appropriately with supervisors, coworkers, and the public. His ability to use good judgment appears to vary from fair to limited, in part compromised by his depression though perhaps also his alcohol use. He would likely have mild difficulties managing change in the workplace from a cognitive perspective. I am uncertain of the degree to which his mood might improve were he to engage in more aggressive treatment of his depression and abstain from alcohol use. He is aware of the advisement to refrain from substance use, whether alcohol or prescription medications obtain[ed] from others.

(Administrative Record at 457.)

### IV. CONCLUSIONS OF LAW

#### A. ALJ's Disability Determination

The ALJ determined that Melsha is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security

regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Melsha had not engaged in substantial gainful activity since January 25, 2012.[3] At the second step, the ALJ concluded from the medical evidence that Melsha had the following severe impairments: degenerative disc disease of the lumbar spine, left shoulder impingement, major depressive disorder, and history of substance abuse, in alleged remission. At the third step, the ALJ found that Melsha did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Melsha's RFC as follows:

---

[3] In his initial application for SSI benefits, Melsha alleged a disability onset date of December 31, 2007; however, at the administrative hearing, Melsha, through counsel, amended his disability onset date to January 25, 2012. *See* Administrative Record at 13; *see also* Melsha's Brief (docket number 11) at 3 (providing that his disability onset date is January 25, 2012).

8

> [Melsha] has the residual functional capacity to perform light work . . . except: he can only occasionally climb, balance, stoop, kneel, crouch, and crawl. He should perform simple, routine tasks and can have occasional interaction with the public, coworkers, and supervisors. He is limited to occasional overhead lifting with his left dominant upper extremity.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Melsha could not perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Melsha could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Melsha was not disabled.

### B. Objections Raised By Claimant

Melsha argues that the ALJ erred in two respects. First, Melsha argues that the ALJ failed to properly evaluate the opinions of Dr. Epp, a consultative examining doctor. Second, Melsha argues that the ALJ failed to recognize and reconcile conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").

#### 1. Dr. Epp's Opinions

Melsha argues that the ALJ failed to properly evaluate the opinions of his examining physician, Dr. Epp. Specifically, Melsha argues that the ALJ's reasons for discounting Dr. Epp's opinions are not supported by substantial evidence on the record. Melsha concludes that this matter should be reversed and remanded to allow the ALJ to properly evaluate Dr. Epp's opinions.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese,*

552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In his decision, the ALJ thoroughly addressed Dr. Epp's findings with regard to Melsha's functional abilities.[4] The ALJ discounted Dr. Epp's opinions as follows:

> The undersigned attributes to the functional capacity opinions [of Dr. Epp] little weight, because the doctor's opinions are not supported by signs and findings consistent with the degree of limitation indicated. To be fair, Dr. Epp noted that [Melsha] walked with a limp and had positive straight leg raise on the right, but his motor strength was 4/5, only a mild limitation. It was 5/5 on the left. However, [Melsha] reported no difficulties during the examination, and he presented with normal neurological function, normal movements, and no atrophy. These clinical observations are not consistent with an individual who would have to lie down much of the day.
>
> Further, the opinion relies on complete acceptance of [Melsha's] allegations concerning the existence, persistence and intensity of symptoms and functional limitations which the record as a whole and inconsistencies establish are not entitled to full credibility and are an underrepresentation of function.
>
> The opinion by Dr. Epp is also not consistent with other evidence and inconsistencies in the record as a whole, which the doctor did not have available. Testing in November 2011 showed a negative straight leg raising test bilaterally. His lower extremity strength was equal bilaterally. [Melsha] also had had full range of motion concerning his spine. The objective findings establish further improvement from the time of the exam in February 2011. Furthermore, the subsequent

---

[4] *See* Administrative Record at 19.

> absence of persistent treatment establishes control or resolution of [Melsha's] complaints. The opinion expressed in February 2011 is not an accurate reflection of [Melsha's] functioning during the time in question.

(Administrative Record at 19-20.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Epp. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Epp's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Vocational Expert Testimony and the DOT*

Melsha argues that the ALJ's ultimate disability determination is flawed because the ALJ improperly relied on vocational expert testimony that was inconsistent with the DOT. At the administrative hearing, the ALJ provided the vocational expert with a hypothetical question which set forth the following limitations:

> [The individual is] capable of light work . . . [and] can occasionally climb, balance, stoop, kneel, crouch, and crawl; and should perform simple, routine tasks; and can have occasional interaction with the public, coworkers, and supervisors.

(Administrative Record at 60.) Based on this hypothetical, the vocational expert testified that Melsha could perform the following jobs: (1) cafeteria attendant, (2) marker, and (3) mail clerk. The ALJ asked the vocational expert a follow-up question:

> Q: Okay. Now assume that same person. And this person, in addition to those restrictions that I gave you, is also limited to only occasional overhead reaching with the left dominant upper extremity. Would that change those jobs?

A:   No, they would still remain[.] . . .

(Administrative Record at 61.)

Melsha argues that the vocational expert's testimony is flawed because Melsha's RFC, which was provided by the ALJ in his hypothetical to the vocational expert, is inconsistent with the DOT's job descriptions for cafeteria attendant, marker, and mail clerk. In other words, Melsha asserts that the ALJ's RFC places restrictions on him which are inconsistent with the DOT job descriptions, and preclude him from being able to perform the jobs of cafeteria attendant, marker, and mail clerk. Specifically, Melsha argues that:

> The vocational expert's testimony is inconsistent with the DOT. According to the DOT, the job of cafeteria attendant, . . . marker, . . . and mail clerk . . . all require "frequent" reaching. The ALJ failed to acknowledge and resolve a possible conflict between [Melsha's] limitation to occasional overhead reaching with the requirement of frequent reaching noted in the DOT for cafeteria attendant, marker, and mail clerk.

Melsha's Brief (docket number 11) at 18. Melsha directs the court to *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014), a case in which the Eighth Circuit Court of Appeals remanded the matter because the ALJ and vocational expert did not address a conflict between the vocational expert's testimony and the DOT. *Id.* at 633. In *Kemp*, the ALJ limited the claimant to occasional overhead reaching, but the vocational expert testified that the claimant could perform a job under the DOT that required constant reaching. *Id.* Specifically, the Eight Circuit determined:

> While the ALJ gave specific directions to the [vocational expert] before he testified, the record does not reflect whether the [vocational expert] or the ALJ even recognized the possible conflict between the hypothetical describing a claimant who could reach overhead only occasionally, and DOT job listing . . . indicating that a check-weigher job involved constant reaching. Further, the [vocational expert]

12

> did not explain the possible conflict and the ALJ sought no
> such explanation. . . . Thus, the Commissioner did not meet
> her burden, at step five of the sequential evaluation process,
> establishing that jobs existed in the economy that [the claimant]
> was capable of performing.

*Kemp*, 743 F.3d at 633. Melsha maintains that his case is "indistinguishable" from *Kemp*.

Social Security Regulation ("SSR") 00-4p explains that in making disability determinations, the Social Security Administration relies "primarily on the DOT for information about the requirements of work in the national economy." SSR 00-4p, 2000 WL 1898704 at *2. SSR 00-4p further provides that:

> Occupational evidence provided by a VE [(vocational expert)]
> . . . generally should be consistent with the occupational
> information supplied by the DOT. When there is an apparent
> unresolved conflict between the VE . . . evidence and the
> DOT, the adjudicator must elicit a reasonable explanation for
> the conflict before relying on the VE . . . evidence to support
> a determination or decision about whether the claimant is
> disabled. At the hearings level, as part of the adjudicator's
> duty to fully develop the record, the adjudicator will inquire,
> on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically
> "trumps" when there is a conflict. The adjudicator must
> resolve the conflict by determining if the explanation given by
> the VE . . . is reasonable and provides a basis for relying on
> the VE . . . testimony rather than on the DOT information.

*Id.* While SSR 00-4p clearly provides that occupation evidence provided by a vocational expert should be consistent with occupational information contained in the DOT, the Court cautions Weber not to read too much into this Social Security regulation. In *Wheeler v. Apfel*, 224 F.3d 891 (8th Cir. 2000), the Eighth Circuit explained that:

> "reliance on the DOT as a definitive authority on job
> requirements is misplaced, however, for DOT definitions are
> simply generic job descriptions that offer the approximate
> maximum requirements for each position, rather than their

> range." The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT.

*Id.* at 897 (quoting *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997)).

The Court disagrees that the present situation is indistinguishable from *Kemp*. Here, unlike in *Kemp*, the ALJ specifically asked the vocational expert whether limiting Melsha to occasional overhead reaching with his left upper extremity would preclude the jobs of cafeteria attendant, maker, and mail clerk.[5] The vocational expert answered that such a limitation would not preclude Melsha from those particular jobs.[6] Thus, the ALJ resolved any apparent conflict between Melsha's RFC and the DOT by specifically asking the vocational expert whether Melsha could perform the jobs of cafeteria attendant, marker, and mail clerk with the limitation of occasional overhead reaching with his left arm, and the vocational expert testified that such a limitation would not preclude Melsha from being able to perform those jobs. Because the ALJ provided the vocational expert with a proper hypothetical question, and elicited testimony from the vocational expert to resolve any possible conflict between the hypothetical and the DOT, the Court finds that the ALJ did not err in relying on the vocational expert's testimony. *See Gragg v. Astrue*, 615 F.3d 932. 941 (8th Cir. 2010) ("Because the hypothetical was adequate, the vocational expert's testimony was reliable to establish that there are jobs that Gragg can perform that exist in significant numbers within the regional and national economies."); *see also Wagner v. Astrue*, 499 F.3d 842, 854 (8th Cir. 2007) (recognizing that an ALJ may rely on the testimony of a vocational expert when making his or her findings at step four and

---

[5] *See* Administrative Record at 61.

[6] *Id.*

five of the five-step sequential evaluation). In sum, the Court concludes that Melsha's argument neither has merit, nor supports a remand of this matter for further consideration.

## V. CONCLUSION

The Court finds that the ALJ properly addressed and weighed the opinions of Dr. Epp. Furthermore, the Court finds that the ALJ resolved any potential inconsistency between the Vocational Expert's testimony and the DOT. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 12th day of November, 2014.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA